**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ZINKIA ENTERTAINMENT,

    Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",

    Defendants.

Case No.: 1:21-cv-00918

Judge Charles P. Kocoras

Magistrate Judge Gabriel A. Fuentes

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR
ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY
INJUNCTION, A TEMPORARY ASSET RESTRAINT, EXPEDITED DISCOVERY, AND
<u>SERVICE OF PROCESS BY E-MAIL AND/OR ELECTRONIC PUBLICATION</u>**

    Plaintiff, ZINKIA ENTERTAINMENT ("ZINKIA" or "Plaintiff") submits this Memorandum

in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order, including a temporary

injunction, a temporary asset restraint, expedited discovery, and service of process by email and/or

electronic publication (the "*Ex Parte* Motion").

# TABLE OF CONTENTS

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ........................................1

II.   STATEMENT OF FACTS....................................................................................4

    A. PLAINTIFF'S TRADEMARKS AND COPYRIGHTS ...........................................4

    B. DEFENDANTS' UNLAWFUL ACTIVITIES .....................................................5

       i.   *Defendants Operate Legitimate-Looking Internet Stores* ................................5

       ii.  *Defendants Illegitimately Optimize the Defendant Internet Stores for Search Engines* ...6

       iii. *Defendants Use Fictitious Aliases and Common Tactics to Evade Shut Down* .............6

III. ARGUMENT ...................................................................................................8

    A. THIS COURT MAY EXERCISE PERSONAL JURISDICTION OVER DEFENDANTS...........................9

    B. STANDARD FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ...........11

    C. PLAINTIFF WILL LIKELY SUCCEED ON THE MERITS .....................................12

       i.   *Plaintiff Will Likely Succeed on Its Trademark Infringement and Counterfeiting Claim* ......................................................................................12

       ii.  *Plaintiff Is Likely to Succeed on Its False Designation of Origin Claim*........................15

       iii. *Plaintiff Is Likely to Succeed on Its Illinois Uniform Deceptive Trade Practices Act Claim*....................................................................................16

       iv. *Plaintiff Is Likely to Succeed on the Copyright Claim*....................................16

    D. THERE IS NO ADEQUATE REMEDY AT LAW AND PLAINTIFF WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF ...........................17

    E. THE BALANCING OF HARMS TIPS IN PLAINTIFF'S FAVOR ...............................19

    F. ISSUANCE OF THE INJUNCTION IS IN THE PUBLIC INTEREST................................20

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE................................21

    A. A TEMPORARY RESTRAINING ORDER IMMEDIATELY ENJOINING DEFENDANTS' UNAUTHORIZED AND UNLAWFUL USE OF PLAINTIFF'S MARKS IS APPROPRIATE .................21

    B. PREVENTING THE FRAUDULENT TRANSFER OF ASSETS IS APPROPRIATE ..............22

    C. PLAINTIFF IS ENTITLED TO EXPEDITED DISCOVERY ...................................24

    D. SERVICE OF PROCESS BY E-MAIL AND/OR ELECTRONIC PUBLICATION IS WARRANTED IN THIS CASE...................................................................25

V.   A BOND SHOULD SECURE THE INJUNCTIVE RELIEF................................29

VI. CONCLUSION ...............................................................................................30

# TABLE OF AUTHORITIES

<u>Cases</u>

*Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992) ................................. 11

*All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.,* 2013 WL 1701871, *10 (C.D. Ill. Apr. 18, 2013) ........................................................................................................... 16

*Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998)........................... 16

*Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007) ................. 22, 23

*Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) ........................................... 20

*CAE, Inc. v. Clean Air Eng'g Inc.,* 267 F.3d 660, 681 (7th Cir. 2001) ............................................ 14

*Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) ....................................................................................................... 11

*Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) ........................... 9

*CSC Holdings, Inc. v. Redisi,* 309 F.3d 988 (7th Cir. 2002)........................................................... 23

*Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940) .......................................................... 23

*Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 381 (7th Cir. 1996)........................................ 13

*Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 461, 462, 469 (7th Cir. 2000)......... 12, 13, 17

*Fairly Odd Treasures, LLC v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 20-cv-1386 (N.D. Ill. Mar. 5, 2020) ................................................... 3, 22, 30

*G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 999 (7th Cir. 1989)............ 13

*Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994) .................................................................................................................................... 18

*Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) .............................................................. 24

*Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308 (1999) ........................... 23

*HAN-A Tools Co. Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 21-cv-0520 (N.D. Ill. Feb. 1, 2021) ................................................................... 3, 22, 29

*Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325 (7th Cir. 1977)..... 17, 18

*In re LDK Solar Secs. Litig.,* 2008 WL 2415186,*2 (N.D. Cal. Jun. 12, 2008)................................. 28

*In re Potash Antitrust Litig.,* 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009).......................................... 28

*In re Vuitton et Fils, S.A.,* 606 F.2d 1 (2d Cir. 1979)......................................................................... 3

*Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988).......... 18

*Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F. 3d 427, 436 (7th Cir. 1999)........... 16

*Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584, *1-2, (D.D.C. Jan. 30, 2008) ........................................................................................................................ 27

*Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994) ........................... 20

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) ................. 22, 23

*Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360, 1363 (7th Cir.1995) ............................................. 15

*Lorillard Tobacco Co. v. Montrose Wholesale Candies* ..................................................................... 23

*Lorillard*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005)........................................................... 23

*MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, No. 1:08-cv-02593, 2008 WL 5100414, *2 (N.D. Ill. Dec. 1, 2008) ................................................................................................................... 27

*Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996). ................................................................................................................................................ 20

*Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1114 (7th Cir. 1997) ............ 17

*Nanya Tech. Corp. v. Fujitsu Ltd.*, No. 1:06-cv-00025, 2007 WL 269087, *6 (D. Guam Jan. 26, 2007) ................................................................................................................................................. 29

*Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005)................... 12, 16

*Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)................................. 24

*Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir. 1961)............................. 13

*Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir.1987) ............................................ 13

*Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004)........ 29

*Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004)........ 27

*Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002)............................... 18

*Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)................... 10

*Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) .................................................... 17

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) ........................ 22, 23

*Rio Props. v. Rio Intern. Interlink,* 284 F.3d 1007 (9th Cir. 2002) .............................................. 27, 28

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 960 (7th Cir. 1992) ........................ 15

*See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001) ........................................ 11

*Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994) ............................................ 16

*Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950)................................................... 21

*Topps Co., Inc. v. Gerrit J. Verburg Co.*, 41 U.S.P.Q.2d 1412, 1417 (S.D.N.Y.1996)..................... 13

*Trans Union LLC v. Credit Research, Inc.,* 142 F. Supp. 2d 1029, 1043 (N.D. Ill. 2001)................ 14

*Ty, Inc.*, 237 F.3d at 895 ................................................................................................ 19

*uBID, Inc. v. GoDaddy Group, Inc.* 623 F.3d 421, 423 (7th Cir. 2010) ........................... 10

*Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) ............... 24

*Wesley–Jessen Division of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862 (7th Cir.1983) .... 18

<u>Statutes</u>

15 U.S.C. § 1051 et seq. .................................................................................................... 9

15 U.S.C. § 1057(b) ......................................................................................................... 13

15 U.S.C. § 1114(1) ......................................................................................................... 12

15 U.S.C. § 1116(a) ......................................................................................................... 21

15 U.S.C. § 1117 .......................................................................................................... 4, 22

15 U.S.C. § 1125(a) ......................................................................................................... 15

28 U.S.C. 1331 ................................................................................................................... 9

28 U.S.C. § 1367(a) ........................................................................................................... 9

28 U.S.C. § 1391 ............................................................................................................... 9

28 U.S.C. §§ 1338(a)-(b) ................................................................................................... 9

Fed. R. Civ. P. Rule 4 .............................................................................................. *passim*

Fed. R. Civ. P. 26(b)(2) .................................................................................................... 24

Fed. R. Civ. P. 65 .................................................................................................... *passim*

<u>Other Authorities</u>

*4 Callmann on Unfair Competition, Trademarks and Monopolies*
   § 88.3(b) at 205 (3d ed. 1970) ...................................................................................... 18

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
   § 30:40 (4th ed. 2013) .................................................................................................. 23

## MEMORANDUM OF LAW

### I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff brings this action against the defendants identified on Schedule A to the Complaint (collectively, the "Defendants") for federal trademark infringement and counterfeiting (Count I), false designation of origin, passing off and unfair competition (Count II), violation of the Illinois Uniform Deceptive Trade Practices Act (Count III), Copyright Infringement 17 U.S.C. § 501(a) (Count IV) and Civil Conspiracy (Count V). As alleged in the Complaint, Defendants are promoting, advertising, marketing, distributing, offering for sale, and selling counterfeit products in connection with Plaintiff's federally registered trademarks as well as products that infringe Plaintiff's copyrights (collectively, the "Counterfeit POCOYO Products"), through various fully interactive commercial Internet websites operating under at least the Defendant Aliases and Online Marketplace Accounts listed in Schedule A to the Complaint (collectively, the "Defendant Internet Stores"). In short, Defendants run a counterfeiting operation with disregard for anything except generating profits.

The Defendants create numerous Defendant Internet Stores with an intent to have them appear to be selling genuine products, while actually selling unauthorized and unlicensed Counterfeit POCOYO Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by concealing both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff has filed this action to combat Defendants' infringement and counterfeiting of Plaintiff's registered trademarks and copyrights,

1

as well as to protect unknowing consumers from purchasing Counterfeit POCOYO Products over the Internet.

This Court has personal jurisdiction over Defendants because each Defendant targets Illinois residents and has offered to sell, has sold and continues to sell Counterfeit POCOYO Products to consumers within the United States, including the State of Illinois. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products being sold in connection with Plaintiff's POCOYO Trademarks and POCOYO Works. Defendants directly target unlawful business activities toward consumers in Illinois, cause harm to Plaintiff's business within this Judicial District, and have caused and will continue to cause irreparable injury to Plaintiff. Defendants deceive the public by trading upon Plaintiff's reputation and goodwill by using their commercial, interactive Internet Stores to sell and/or offer for sale unlicensed Counterfeit POCOYO Products in connection with Plaintiff's trademarks and copyrights.

Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue an *ex parte* a Temporary Restraining Order. Specifically, Plaintiff seeks an order: (1) temporarily restraining Defendants' continued manufacture, importation, distribution, offering for sale, and sale of Counterfeit POCOYO Products; and (2) temporarily restraining Defendants' assets to preserve Plaintiff's right to an equitable accounting. Ancillary to and as part of the TRO, Plaintiff respectfully requests that this Court (3) authorize expedited discovery allowing Plaintiff to inspect and copy Defendants' records relating to the manufacture, distribution, offering for sale, and sale of Counterfeit POCOYO Products and Defendants' financial accounts; and (4) authorize service by electronic mail and/or electronic publication.

In light of the covert nature of off-shore counterfeiting activities and the vital need to establish an economic disincentive for engaging in infringing activities, courts regularly issue such orders. *See, e.g., HAN-A Tools Co. Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 21-cv-0520 (N.D. Ill. Feb. 1, 2021) and *Fairly Odd Treasures, LLC v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 20-cv-1386 (N.D. Ill. Mar. 5, 2020) (Granting *ex parte* Temporary Restraining Order); *see also, In re Vuitton et Fils, S.A.,* 606 F.2d 1 (2d Cir. 1979) (holding that ex parte temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

Plaintiff's well-pleaded factual allegations, which must be accepted as true, and evidence submitted through declarations, establishes that issuing a temporary restraining order against Defendants is necessary and proper. Plaintiff can demonstrate a strong likelihood of success on the merits. Plaintiff is the owner of trademarks and copyrights, and Defendants' use of Plaintiff's trademarks and copyrights to sell Counterfeit POCOYO Products is causing consumer confusion.

In addition, Defendants have and continue to irreparably harm Plaintiff through diminished goodwill, damage to Plaintiff's reputation and ability to license its products. Monetary damages are inadequate to Plaintiff for these damages. This makes injunctive relief particularly appropriate in this matter.

Issuance of an injunction is also in the public interest because it will prevent confusion among the public and prevent unknowing consumers from being deceived into purchasing Counterfeit POCOYO Products.

Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as financial institutions, who are in active concert with the Defendants

or who aid and abet Defendants and are given actual notice of the order. Similarly, a prejudgment asset freeze is also proper since Plaintiff seeks an equitable remedy in the accounting of Defendants' profits pursuant to 15 U.S.C. § 1117(a) and 17 U.S.C. § 501(a). Finally, an order authorizing service of process by email and/or electronic publication is proper as a result of Defendants' intentional efforts to conceal their identities and operate their business online. Serving Defendants electronically is the best method for notifying them of this action and providing them the opportunity to defend and present their objections.

## II.  STATEMENT OF FACTS

### A.  Plaintiff's Trademarks and Copyrights

Plaintiff is in the business of developing, marketing, selling, licensing and distributing the POCOYO brand of products which have gained worldwide publicity and success during the past a few decades. *See* Declaration of Alberto Delgado Gavela (the "Gavela" Declaration) at ¶¶ 4-6. Plaintiff is the owner of trademark registrations for the POCOYO Trademarks (the "POCOYO Trademarks"). *Id.* The U.S. registrations for the POCOYO Trademarks are valid, subsisting, and in full force and effect. *Id.* at ¶ 6. True and correct copies of the federal trademark registration certificates and copyright registration certificates for the POCOYO Trademarks and POCOYO Works are attached to the Alberto Delgado Gavela Declaration as Exhibit 1 and Exhibit 2.

The POCOYO Trademarks are distinctive and identify the merchandise as goods from Plaintiff. *Id.* at ¶ 7. The registrations for the POCOYO Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the trademarks. The POCOYO Trademarks have been continuously used and never abandoned. *Id.* at ¶ 8. Plaintiff has expended time, money, and other resources in developing, advertising, and otherwise promoting the POCOYO Trademarks. *Id.* at 9. As a result, products bearing the POCOYO Trademarks are recognized and

exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff. *Id.*

### B. Defendants' Unlawful Activities

The success of the POCOYO brand has resulted in it being counterfeited. *Id. at* ¶ 10. Plaintiff has identified numerous online marketplace accounts linked to fully interactive websites and marketplace listings on platforms, including the Defendant Internet Stores, which were offering for sale, selling, and importing Counterfeit POCOYO Products to consumers in this Judicial District and throughout the United States. *Id.* Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. Declaration of Keith A. Vogt (the "Vogt" Declaration) at ¶ 2. According to an intellectual property rights seizures statistics reports issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government since 2012 annually exceeds $1.2 billion. *Id.* at ¶ 3. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. *Id.* at ¶ 4.

### i. Defendants Operate Legitimate-Looking Internet Stores

Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine POCOYO Products. Gavela Declaration at ¶ 12. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, Amazon and PayPal. *Id.* Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. *Id.* Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have

come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos. *Id.* Plaintiff has not licensed or authorized Defendants to use its POCOYO Trademarks, and none of the Defendants are authorized retailers of genuine POCOYO Products. *Id.*

ii.  Defendants Illegitimately Optimize the Defendant Internet Stores for Search Engines

Upon information and belief, Defendants also deceive unknowing consumers by using the POCOYO Trademarks and Works without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for POCOYO Products. *Id.* at ¶ 13. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine POCOYO Products. *Id.* Further, Defendants utilize similar illegitimate SEO tactics to propel new online marketplace accounts to the top of search results after others are shut down. *Id.* As such, Plaintiff also seeks to disable Defendant online marketplace accounts owned by Defendants that are the means by which the Defendants could continue to sell Counterfeit POCOYO Products.

iii.  Defendants Use Fictitious Aliases and Common Tactics to Evade Shut Down

Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. *Id.* at ¶ 14. Other Defendant online marketplace accounts use privacy services that conceal the owners' identity and contact information. *Id.* Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. *Id.* Such

Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down. *Id.*

Defendants in this case and defendants in other similar cases against online counterfeiters often use a variety of other common tactics to evade enforcement efforts. *Id.* at ¶ 16. *See also,* Vogt Declaration at ¶ 5. For example, counterfeiters like Defendants will often register new online marketplace accounts under new aliases once they receive notice of a lawsuit. *Id. See also,* Vogt Declaration at ¶ 5. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. *Id. See also,* Vogt Declaration at ¶ 6. Rogue servers are notorious for ignoring take down demands sent by brand owners. *Id. See also,* Vogt Declaration at ¶ 6. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers. Vogt Declaration at ¶ 3.

Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation. Gavela Declaration at ¶ 17. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their accounts to off-shore bank accounts outside the jurisdiction of this Court. *Id. See also,* Vogt Declaration at ¶ 7. Indeed, analysis of transaction logs from similar cases brought by other trademark owners indicates that off-shore counterfeiters regularly move funds from their U.S. accounts to China-based bank accounts outside the jurisdiction of this Court. Vogt Declaration at ¶ 9.

7

Plaintiff's well-pleaded allegations regarding registration patterns, similarities among the Defendant Internet Stores and the Counterfeit POCOYO Products for sale thereon, and common tactics employed to evade enforcement establish a logical relationship among the Defendants suggesting that Defendants are an interrelated group of counterfeiters. Upon information and belief, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products in connection with counterfeit versions of the POCOYO Trademarks and Works in the same transaction, occurrence, or series of transactions or occurrences. As indicated above, the tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to discover the true identities of the Defendants, the exact interworking of the Defendants' counterfeit network, and the relationship among Defendants. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill symbolized by the POCOYO Trademarks and diminish the value of the POCOYO Works. To stop Defendants' sale of Counterfeit POCOYO Products, Plaintiff respectfully requests that this Court issue a temporary restraining order. Without the relief requested by Plaintiff's instant Motion, Defendants' unlawful activity will continue unabated, and Plaintiff and consumers will suffer irreparable harm.

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The Defendants here fraudulently promote, advertise, offer to sell, and sell goods in connection with counterfeits of the POCOYO Trademarks and infringe POCOYO Works

via the Defendant Internet Stores. Defendants are creating a false association in the minds of consumers between the Defendants and Plaintiff by deceiving consumers into believing that the Counterfeit POCOYO Products for sale on Defendants' websites are sponsored or endorsed by Plaintiff. The entry of a temporary restraining order is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the POCOYO Trademarks and infringement of the POCOYO Works and preserve the status quo until such time as a hearing can be held.

In the absence of a temporary restraining order without notice, the Defendants can and likely will modify registration data and content, change hosts, redirect traffic to other websites in their control, and transfer any assets from U.S.-based accounts to off-shore bank accounts. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* temporary restraining order. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

### A. This Court May Exercise Personal Jurisdiction over Defendants

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, by

directly offering for sale products into this Judicial District as well as through at least the fully interactive, commercial Defendant Internet Stores. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of the POCOYO Trademarks and copyrighted POCOYO Works. Each Defendant has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell Counterfeit and/or infringing POCOYO Products to consumers within the United States, including the State of Illinois. *See* Complaint at ¶¶ 1-2, and 23-25. Without the benefit of an evidentiary hearing, plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor. *See uBID, Inc. v. GoDaddy Group, Inc.* 623 F.3d 421, 423 (7th Cir. 2010); *see also*, *Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) ("When determining whether a plaintiff has met his burden, jurisdictional allegations pleaded in the complaint are accepted as true unless proved otherwise by defendants' affidavits or exhibits.").

Illinois courts regularly exercise personal jurisdiction over websites that are offering for sale and selling of infringing and counterfeit merchandise to Illinois residents over the Internet. 735 ILCS 5/2-209(a)(2). *See, e.g., Curry v. Revolution Labs., LLC,* 949 F.3d 385, 399 (7th Cir. 2020); *Christian Dior Couture, S.A. v. Liu,* 2015 U.S. Dist. LEXIS 158225 (N.D. Ill. Nov. 17, 2015); *Monster Energy Co. v. Chen Wensheng*, 2015 U.S. Dist. LEXIS 132283 (N.D. Ill. Sept. 29, 2015).

Through at least the fully interactive commercial Internet websites operating under the Defendant Internet Stores and the marketplace listings operated using the online marketplace accounts, each of the Defendants has targeted sales from Illinois residents by offering shipping to the United States, including Illinois, and, on information and belief, has sold or offered to sell Counterfeit POCOYO Products to residents of the United States, including Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

**B. Standard for Temporary Restraining Order and Preliminary Injunction**

District Courts within this Circuit hold that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.* The sliding scale approach is not

11

mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 895-896. The greater the movant's likelihood of succeeding on the merits, the less the balancing of harms need be in his favor. *See Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 461 (7th Cir. 2000).

### C. Plaintiff Will Likely Succeed on the Merits

i. <u>Plaintiff Will Likely Succeed on Its Trademark Infringement and Counterfeiting Claim</u>

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, uses in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use[s] is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). To prove a *prima facie* case of infringement, a plaintiff must show (1) its mark is distinctive enough to be worthy of protection; (2) Defendants are not authorized to use the trademark; and (3) Defendants' use of the trademark causes a likelihood of confusion as to the origin or sponsorship of Defendants' products. *See Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citation omitted). Plaintiff satisfies all three requirements of the Lanham Act to successfully bring a trademark infringement and counterfeiting claim.

Regarding the first two elements, Plaintiff's POCOYO Trademarks are inherently distinctive and are registered with the United States Patent and Trademark Office on the Principal Register. The POCOYO Trademarks have been continuously used. Gavela Declaration at ¶¶ 5-8. The registrations for the POCOYO Trademarks are valid, subsisting, and in full force and effect. *Id*. The registrations for the POCOYO Trademarks constitute *prima facie* evidence of their validity

12

and of Plaintiff's exclusive right to use the POCOYO Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, Plaintiff has not licensed or authorized Defendants to use the POCOYO Trademarks, and none of the Defendants are authorized retailers of genuine POCOYO Products. *Id.* at ¶ 12.

Plaintiff satisfies the third factor, as well. Some courts do not undertake a factor-by-factor analysis under *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir. 1961) because counterfeits, by their very nature, cause confusion. *See Topps Co., Inc. v. Gerrit J. Verburg Co.*, 41 U.S.P.Q.2d 1412, 1417 (S.D.N.Y.1996) ("Where the marks are identical, and the goods are also identical and directly competitive, the decision can be made directly without a more formal and complete discussion of all of the Polaroid factors."); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir.1987) ("Where, as here, one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion.").

The Seventh Circuit, however, has enumerated seven factors to determine whether there is a likelihood of confusion: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of the defendants to palm off their products as that of another. *Eli Lilly*, 233 F.3d at 461-462 (citation omitted). These factors are not a mechanical checklist, and "[t]he proper weight given to each of [the] factors will vary from case to case." *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 381 (7th Cir. 1996). At the same time, although no one factor is decisive, the similarity of the marks, the intent of the defendant, and evidence of actual confusion are the most important considerations. *G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 999 (7th Cir. 1989).

In this case, Plaintiff plainly satisfies the likelihood of confusion test. The Defendants are selling Counterfeit POCOYO Products using counterfeit marks identical to the POCOYO Trademarks. As such, the first and second likelihood of confusion factors weigh heavily in favor of Plaintiff.

Plaintiff also satisfies the third factor, namely, the area and manner of concurrent use. When considering the third factor, a court looks at "whether there is a relationship in use, promotion, distribution or sales between the goods or services of the parties." *CAE, Inc. v. Clean Air Eng'g Inc.,* 267 F.3d 660, 681 (7th Cir. 2001). A court also looks to whether the parties used the same channels of commerce, targeted the same general audience, and/or used similar marketing procedures. *Id*. Here, both Plaintiff and Defendants show the same products using the POCOYO Trademarks to the same consumers. Thus, because Defendants target the same consumers as Plaintiff, this factor also weighs in favor of Plaintiff.

Regarding the fourth factor, degree of consumer care, potential consumers purchasing POCOYO Products are not restricted to a certain specialized, sophisticated group of people. Rather, the consumer base is a diverse group of people. "[W]hen a buyer class is mixed, the standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class." *Trans Union LLC v. Credit Research, Inc.,* 142 F. Supp. 2d 1029, 1043 (N.D. Ill. 2001) (citation omitted). As such, POCOYO brand consumers are very likely to be confused, so this factor favors Plaintiff.

Due to their long-standing use and wide acceptance by the public, the POCOYO Trademarks have become associated with high quality POCOYO Products. The POCOYO Trademarks are distinctive when applied to the POCOYO Products. The marks signify to

consumers that the products come from Plaintiff and are manufactured to quality standards. Thus, the fifth factor, the strength of the marks, also weighs heavily in favor of Plaintiff.

As for the sixth factor, Plaintiff does not need to prove likelihood of confusion with evidence of actual confusion; instead, it merely needs to show *some* evidence of potential confusion. *See Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360, 1363 (7th Cir.1995); *see also Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 960 (7th Cir. 1992) (the Seventh Circuit has consistently found that "plaintiff need not show actual confusion in order to establish likelihood of confusion."). In this case, actual confusion can be inferred because Defendants are selling counterfeit POCOYO Products in connection with the POCOYO Trademarks. Because the goods are similar and have identical and similar uses, consumers will be confused and think that Defendants' products are genuine POCOYO Products or are sponsored or endorsed by Plaintiff. This factor weighs in favor of Plaintiff.

Regarding the seventh and final factor, Defendants are intentionally using the POCOYO Trademarks to confuse and deceive the consuming public into thinking that Defendants' Counterfeit POCOYO Products are manufactured by or emanate from Plaintiff. Defendants are purposefully attempting to benefit and trade off Plaintiff's goodwill and reputation. Therefore, the final factor regarding Defendants' intent also weighs heavily in Plaintiff's favor.

In sum, each of the seven likelihood of confusion factors weighs heavily in favor of Plaintiff, and, therefore, Plaintiff has proved that it has a reasonable likelihood of success on the merits for its trademark infringement and counterfeiting claim.

      ii.  <u>Plaintiff Is Likely to Succeed on Its False Designation of Origin Claim</u>

A plaintiff bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) the plaintiff has a protectable trademark; and (2) a likelihood of confusion will exist

as to the origin of plaintiff's products. *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.,* 2013 WL 1701871, *10 (C.D. Ill. Apr. 18, 2013) (*citing Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F. 3d 427, 436 (7th Cir. 1999)). This is the same test that is used for determining whether trademark infringement has occurred under the Lanham Act. *See Neopost*, 403 F. Supp. 2d at 684. Because the POCOYO Trademarks are registered marks, and Plaintiff has established a likelihood of success on the merits of its trademark infringement and counterfeiting claim against Defendants (supra), a likelihood of success on the merits for Plaintiff's false designation of origin claim is also established.

    iii.  <u>Plaintiff Is Likely to Succeed on Its Illinois Uniform Deceptive Trade Practices Act Claim</u>

In Illinois, courts resolve unfair competition and deceptive trade practices claims "according to the principles set forth under the Lanham Act." *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994). Illinois courts look to federal case law and apply the same analysis to state infringement claims. *Id.* at 579 (citation omitted). The determination as to whether there is a likelihood of confusion is similar under both the Lanham Act and the Illinois Uniform Deceptive Trade Practices Act. *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998). Because Plaintiff has established a likelihood of success on the merits of its trademark infringement and counterfeiting claim against Defendants (supra), and the standard is the same under Illinois law, Plaintiff has established a likelihood of success on the merits for its Illinois Uniform Deceptive Trade Practices Act claim.

    iv.  <u>Plaintiff Is Likely to Succeed on the Copyright Claim</u>

To establish copyright infringement under 17 U.S.C. § 501, a plaintiff must prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *JCW Investments, Inc. v. Novelty, Inc.*, 482 F.3d 910, 914 (7th Cir. 2007).

16

Moreover, copyright protection extends to works derived from the original work since Section 101 of the Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization . . ., or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. Lastly, "when cartoons or movies are copyrighted, a component of that copyright protection extends to the characters themselves, to the extent that such characters are sufficiently distinctive. *Warner Bros. Entm't, Inc. v. X One X Prods*., 644 F.3d 584, 597 (8th Cir. 2011).

Here, Plaintiff owns the copyrights in the POCOYO Works. Gavela Declaration at ¶ 5. The accused products are identicial to the protected works or are derived from the distinctive creative content found in the POCOYO Works. As such, the infringement is clear and establishes that Plaintiff is likely to succeed on the merits of this claim.

### D. There Is No Adequate Remedy at Law and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief

Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988).

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000)); *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1114 (7th Cir. 1997); *Wesley–Jessen Division of Schering Corp.*

*v. Bausch & Lomb Inc.*, 698 F.2d 862, 867 (7th Cir.1983). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988); *see also 4 Callmann on Unfair Competition, Trademarks and Monopolies* § 88.3(b) at 205 (3d ed. 1970). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of the POCOYO Trademarks and Copyrights has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, loss of future sales and loss of potential licensees and disruption of relationships with existing licensees. Gavela Declaration at ¶¶ 18-23.

The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (Finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law); *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages."). Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule

of Civil Procedure 65(b)(1). Gavela Declaration at ¶ 23. As such, Plaintiff should be granted preliminary relief.

The harms caused by the copyright infringement of the POCOYO Works is equally insidious. The infringements deprive Plaintiff of the ability to control the creative content protected by the copyrights, they devalue the POCOYO brand by associating it with inferior quality goods, and they undermine the value of the copyrights by creating the impression that infringement may be undertaken with impunity which threatens Plaintiff's ability to develop further licensees and maintain existing licenssee relationships. Gavela Declaration at ¶¶ 19-23. These are recognized irreparable harms for which monetary compensation is inadequate. *See MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219 (C.D. Cal. 2007) ("In sum, Plaintiffs' have offered two independently sufficient grounds for a finding of irreparable harm. Plaintiffs will suffer irreparable harm because of StreamCast's likely inability to pay for the past and/or future infringements that it has induced. Additionally, StreamCast's inducement has and will continue to irreparably harm Plaintiffs' ability to enforce its exclusive rights."); *Warner Bros. Entm't, Inc. v. WTV Sys.,* 824 F. Supp. 2d 1003, 1013-14 (C.D. Cal. 2011) (recognizing that the perception of the ability to infringe copyright protected work undermines the ability to develop and conduct business).

Accordingly, Plaintiff has established that it will be irreparably harmed by Defendants' infringing conduct.

### E. The Balancing of Harms Tips in Plaintiff's Favor

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895.

As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc*., 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996). This is equally true in the copyright context, since Defendants "cannot complain" of being forced to cease their infringement. *Warner Bros. Entm't, Inc. v. WTV Sys.,* 824 F. Supp. 2d 1003, 1014-15 (C.D. Cal. 2011).

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Counterfeit and infringing POCOYO Products. Thus, the balance of equities tips decisively in Plaintiff's favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

### F. Issuance of the Injunction Is in the Public Interest

"[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work." *Apple Computer, Inc. v. Franklin Computer Corp*., 714 F.2d 1240, 1255 (3rd Cir. 1983). This is especially true here since protecting the registered POCOYO Trademarks and POCOYO Works extends beyond protecting the Plaintiff. It also protects general public from being harmed by the low-quality goods from Defendants.

Moreover, courts have long held that "the trademark laws ... are concerned not alone with the protection of a property right existing in an individual, but also for the protection of the public

from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950) (citations omitted). In this case, the injury to the public is significant, and the injunctive relief sought is intended to remedy that injury by dispelling the public confusion created by Defendants' actions.

For these reasons, it is respectfully submitted that granting the Motion for Entry of a Temporary Restraining Order is in the public interest.

## IV.      THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

In addition to this Court's inherent authority to issue injunctive relief, the Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a). Furthermore, Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Fed. R. Civ. P. 65. The facts in this case warrant such relief.

### A.      A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiff's Marks Is Appropriate

Plaintiff requests a temporary injunction requiring the Defendants to immediately cease all use of the POCOYO Trademarks or substantially similar marks on or in connection with all Defendant Internet Stores. Such relief is necessary to stop the ongoing harm to the POCOYO Trademarks and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the POCOYO Trademarks.

The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate over the Internet in an anonymous fashion. Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other Defendant Internet Stores used to distribute Counterfeit POCOYO Products.

Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g., HAN-A Tools Co. Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 21-cv-0520 (N.D. Ill. Feb. 1, 2021) and *Fairly Odd Treasures, LLC v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 20-cv-1386 (N.D. Ill. Mar. 5, 2020).

**B.  Preventing the Fraudulent Transfer of Assets Is Appropriate**

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of Counterfeit and infringing POCOYO Products is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in China, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of its intellectual property infringement and trademark counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Plaintiff is entitled, "subject to the principles of equity, to recover ... defendant's

22

profits." Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve the relief sought by Plaintiff.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court, citing *Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308 (1999), recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano*, 527 U.S. at 325 (citing *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.; see also Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters.*, *Inc.*, 970 F.2d 552, 559 (9th Cir. 1992); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ("since the assets in question ... were the profits of the [defendants] made by unlawfully stealing [the plaintiffs'] services, the freeze was appropriate and may remain in place pending final disposition of this case."); *accord* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:40 (4th ed. 2013). In addition, courts in this district and across the country regularly issue asset-restraining orders for entire financial accounts in cases involving the sale of counterfeit products. *See, e.g., the Counterfeit Website Cases, supra* at p. 28.

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to off-shore bank accounts. Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper.

### C. Plaintiff Is Entitled to Expedited Discovery

The Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). A district court has wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

As described above, Defendants are using third-party payment processors such as Visa®, PayPal®, and Western Union, which helps to increase their anonymity by interposing a third party between the consumer and Defendants. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the order.

Plaintiff respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The discovery requested on an expedited basis in Plaintiff's Proposed Temporary Restraining Order has been limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

24

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third party who is in active concert with the Defendants that is given notice of the order to provide expedited discovery in this action. Fed. R. Civ. P. 65(d)(2)(C). Plaintiff's counsel is aware that the same third parties, in previous lawsuits, have worked with trademark and copyright owners and is not aware of any reason that Defendants or third parties cannot comply with these expedited discovery requests without undue burden. Further, all relevant third parties have in fact complied with identical requests in previous similar cases. More importantly, as Defendants have engaged in many deceptive practices in hiding their identities and accounts, Plaintiff's seizure and asset restraint in the Temporary Restraining Order may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

### D. Service of Process by E-mail and/or Electronic Publication Is Warranted in this Case

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff requests this Court's authorization to serve process by electronically publishing a link to the Complaint, the Temporary Restraining Order, and other relevant documents on a website to which the Defendant Online marketplace accounts that are transferred to Plaintiff's control will redirect, and/or by sending an e-mail to the e-mail addresses identified in Exhibit 3 to the Gavela Declaration and any e-mail addresses provided for Defendants by third parties that includes a link to said website. Plaintiff submits that providing notice via electronic publication and/or e-mail, along with any notice that Defendants receive from payment processors, is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

Electronic service is appropriate and necessary in this case because the Defendants, on information and belief: (1) have provided false names and physical address information in their

registrations for the Defendant Internet Stores in order to conceal their locations and avoid liability for their unlawful conduct; and (2) rely primarily on electronic communications to communicate with their registrars and customers, demonstrating the reliability of this method of communication by which the registrants of the Defendant Internet Stores may be apprised of the pendency of this action. Authorizing service of process solely via e-mail and/or electronic publication will benefit all parties and the Court by ensuring that Defendants receive prompt notice of this action, thus allowing this action to move forward expeditiously. Absent the ability to serve Defendants in this manner, Plaintiff will almost certainly be left without the ability to pursue a final judgment.

Many of Defendants' names and physical addresses used to register the Defendant Online Marketplace Accounts are incomplete, contain randomly typed letters, fail to include cities or states, or use privacy services that conceal this information. Vogt Decl. at ¶ 10. Identical contact information among multiple online marketplace accounts also suggests that many of the aliases used to register the Defendant Online marketplace accounts are used by the same individual or entity. *Id.*

Despite providing false physical addresses, the registrants of the Defendant Internet Stores must generally provide an accurate e-mail address so that their registrars may communicate with them regarding issues related to the purchase, transfer, and maintenance of the various accounts. Likewise, online marketplace account operators accepting PayPal must provide a valid email address to customers for completing payment. Moreover, it is necessary for merchants, such as the registrants of the Defendant Internet Stores, who operate entirely online, to visit their Internet Store to ensure it is functioning and to communicate with customers electronically. As such, it is far more likely that Defendants can be served electronically than through traditional service of process methods.

26

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement as the Court directs. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). The Ninth Circuit in *Rio Properties* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Id.* at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

Similarly, a number of Courts, including the Northern District of Illinois, have held that alternate forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Id.* at 1018; s*ee also, e.g., the Counterfeit Website Cases, supra* at p. 28; *see also, MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, No. 1:08-cv-02593, 2008 WL 5100414, *2 (N.D. Ill. Dec. 1, 2008) (holding e-mail and facsimile service appropriate); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (quoting *Rio*, 284 F.3d at 1018) (allowing e-mail service); s*ee also Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584, *1-2, (D.D.C. Jan. 30, 2008) (citing *Rio*, 284 F.3d at 1017-1018; other citations omitted) (holding that "in certain circumstances ... service of process via electronic mail ... is appropriate and may be authorized by the Court under Rule 4(f)(3) of the Federal Rules of Civil Procedure").

Plaintiff submits that allowing service solely by e-mail and/or electronic publication in the present case is appropriate and comports with constitutional notions of due process, particularly given the decision by the registrants of the Defendant Internet Stores to conduct their Internet-based activities anonymously.

27

Furthermore, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *Rio Props. v. Rio Intern. Interlink,* 284 F.3d 1007, 1014-15 (9th Cir. 2002). As the *Rio Properties* Court explained, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Id.* at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement. There are no other limitations or requirements. *Id.* Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Id.* As such, this Court may allow Plaintiff to serve the defendants via electronic publication and/or e-mail.

Plaintiff has good cause to suspect the registrants of the respective Defendant Intnernet Stores are almost all residents of China. The United States and the People's Republic of China are both signatories to The Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters (the "Convention"). Vogt Declaration at ¶ 11. The Hague Convention does not preclude service by email, and the declarations to The Hague Convention filed by China do not appear to expressly prohibit email service. *Id.* Additionally, according to Article 1 of The Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known." *Id*. at ¶ 12. As such, United States District Courts, including in this District, routinely permit alternative service of process notwithstanding the applicability of The Hague Convention. *See e.g.*, *In re Potash Antitrust Litig.,* 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009) ("plaintiffs are not required to first attempt service through the Hague Convention."); s*ee also In re LDK Solar Secs. Litig.,* 2008 WL 2415186,*2 (N.D. Cal. Jun. 12, 2008) (authorizing alternative means of service on Chinese defendants without

28

first attempting "potentially fruitless" service through the Hague Convention's Chinese Central Authority); *Nanya Tech. Corp. v. Fujitsu Ltd.*, No. 1:06-cv-00025, 2007 WL 269087, *6 (D. Guam Jan. 26, 2007) (Hague Convention, to which Japan is a signatory, did not prohibit e-mail service upon Japanese defendant); *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (recognizing that, while "communication via e-mail and over the internet is comparatively new, such communication has been zealously embraced within the business community"). In addition, the law of the People's Republic of China does not appear to prohibit electronic service of process. Vogt Declaration at ¶ 13. The proposed Temporary Restraining Order provides for issuance of single original summons[1] in the name of "13071860213 and all other Defendants identified in the Complaint" that shall apply to all Defendants in accordance with Federal Rule of Civil Procedure 4(b). As such, Plaintiff respectfully requests this Court's permission to serve Defendants via e-mail and/or electronic publication.

## V.    A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of Plaintiff's evidence of counterfeiting, infringement, and unfair competition, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than Ten Thousand U.S. Dollars ($10,000.00). *See, e.g., HAN-A Tools Co. Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 21-cv-0520 (N.D. Ill. Feb. 1, 2021) and *Fairly Odd Treasures, LLC v. The*

---

[1] The Advisory Committee Notes to the 1993 Amendment to Rule 4(b) states, "If there are multiple defendants, the plaintiff may secure issuance of a summons for each defendant, or may serve copies of a single original bearing the names of multiple defendants if the addressee of the summons is effectively identified."  Fed. R. Civ. P. 4(b) advisory committee notes (1993) (emphasis added).

*Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 20-cv-1386 (N.D. Ill. Mar. 5, 2020)

## VI. CONCLUSION

Plaintiff's business, its POCOYO brand, and consumers are being irreparably harmed. Without entry of the requested relief, the sale of Counterfeit and/or infringing POCOYO Products will continue to lead prospective purchasers and others to believe that Defendants' products have been manufactured by or emanate from Plaintiff. Therefore, entry of an *ex parte* order is necessary to protect Plaintiff's trademarks and copyrights rights, to prevent further harm to Plaintiff and the consuming public, and to preserve the status quo. In view of the foregoing and consistent with previous similar cases, Plaintiff respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith and set a status hearing before the expiration of the Temporary Restraining Order at which hearing Plaintiff intends to present a motion for preliminary injunction.

DATED:  February 18, 2021

Respectfully submitted,

/s/ *Keith A. Vogt*
Keith A. Vogt (Bar No. 6207971)
Keith Vogt, Ltd.
111 West Jackson Boulevard, Suite 1700
Chicago, Illinois 60604
Telephone: 312-675-6079
E-mail:  keith@vogtip.com

***ATTORNEY FOR PLAINTIFF***

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was electronically filed on February 18, 2021 with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification of such filing to all registered attorneys of record.

*/s/ Keith A. Vogt*
Keith A. Vogt